UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WENDY BARCOMB,<br>    *Plaintiff*,<br>    *v.*<br>ROBERT KRAEGER and OFFICER DIMASSA<br>    *Defendants.* | Civil No. 3:14cv1159 (JBA)<br><br>May 5, 2016 |

**RULING DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Wendy Barcomb brought this § 1983 action alleging excessive force[1] in violation of the Fourth Amendment against Defendants Officer Robert Kraeger and Officer DiMassa of the Middletown Police Department. Defendants now move [Doc. # 31] for summary judgment. Oral argument was held on April 6, 2016. For the following reasons, Defendants' motion is denied.

**I.    Background**[2]

Wendy Barcomb is a 45-year old woman who suffers from post-traumatic stress

---

[1] Ms. Barcomb initially also claimed false arrest and malicious prosecution, but she has withdrawn [Doc. # 28] these claims.

[2] Following oral argument, Defendants filed a supplemental reply [Doc. # 37] attaching numerous cases and a new exhibit, without seeking leave of the Court to do so. However, "in general, a party may not attempt to cure deficiencies in its moving papers by including new evidence in its reply to opposition papers." *Travelers Indem. Co. v. Excalibur Reinsurance Corp.*, No. 3:11-CV-1209 (CSH), 2013 WL 4012795, at *2 (D. Conn. Aug. 5, 2013) (citing *United States v. Noble Jewelry Holdings, Ltd.*, No. 08 CIV. 7826 (JGK) (KNF), 2012 WL 1228199 (S.D.N.Y. Apr. 9, 2012)). As Judge Haight explained, "[t]he reason to refuse consideration of such evidence 'submitted for the first time in reply,'" or as here, in a supplemental reply, "is that it 'would be fundamentally unfair to the [non-moving party], because it would deprive [said party] of an opportunity to respond.'" *Id.* (quoting *Noble Jewelry Holdings*, 2012 WL 1228199, at *5). For that reason, the Court declines to consider the contents of Defendants' supplemental reply.

disorder, bipolar disorder, severe learning disabilities, and epilepsy. (Barcomb Dep., Ex. 2 to Opp'n Mot. Summ. J. [Doc. # 32] at 18, 75–76, 110.) In 2012, when the incident underlying this lawsuit occurred, Ms. Barcomb was itinerantly homeless and struggling with alcoholism. (*See id.* at 152, 143.) She had been arrested on four prior occasions for creating public disturbances and had received multiple citations for drinking in public, jaywalking, and trespassing. (*Id.* at 31–32, 54–66.)

On June 19, 2012, at about 3:45 p.m., Ms. Barcomb walked into Spear Park in Middletown, Connecticut and sat down at a concrete table. (*Id.* at 160–61.) She put her head down on the table, and after about twenty minutes, she fell asleep. (*Id.* at 172.) Twenty or twenty-five minutes later, she awoke to the sound of a police officer calling her name. (*Id.* at 173, 179, 186–87.) When she looked up, she saw Officers Kraeger and DiMassa approaching her. (*Id.* at 186–87.) Upon seeing that one of the officers was writing her a ticket, Ms. Barcomb stood up and asked the officer why she was getting a ticket. (*Id.* at 180, 184, 186–88.) The officer responded that she was being cited for drinking in public. (*Id.* at 180.) Ms. Barcomb, insisting that she was not drinking in public,[3] became upset and began to yell at the officers, protesting the ticket using some rather colorful language, and gesturing with her hands. (*Id.* at 181, 184, 188, 207.)

When the officer handed Ms. Barcomb the ticket, she exclaimed either "F**k this ticket" or "I'm going straight to the f**king mayor with this," and proceeded to rip the ticket

---

[3] Whether Ms. Barcomb had in fact been drinking is unclear from the record, as Ms. Barcomb initially denied this claim, then admitted it, and then denied it again. (*See* Barcomb Dep. at 110, 111–12, 114–16, 121–28.) There is no other evidence in this summary judgment record pertaining to whether Ms. Barcomb was drunk on the day of the incident.

up. (*Id.* at 180, 182, 188, 189.) Officer Kraeger responded by telling Ms. Barcomb that she was going to be charged with littering for throwing the ticket on the ground. (*Id.* at 180.) At some point during this exchange, Ms. Barcomb began to slowly walk away from the officers. (*Id.* at 205.) As she was walking away, one of the officers commanded her to stop. (*Id.* at 188, 205.) She did. (*Id.* at 188, 205.) It is unclear from the record whether this occurred before or after Ms. Barcomb received and tore up the ticket. (*Compare id.* at 187–88, 205 *with id.* at 197.) Whatever the order of events, at some point, both Ms. Barcomb and the officers moved to another part of the park, where they stood facing one another. (*Id.* at 189, 191, 198.) Then, without giving Ms. Barcomb any command to stop or calm down or any warning of what he was about to do, Officer Kraeger took her down to the ground and handcuffed her.[4] (*Id.* at 207.)

In Ms. Barcomb's account of the incident, Officer Kraeger grabbed her shoulders and "thr[e]w[] her to the ground, aggressively," striking her right knee and the upper left part of her face against the ground. (*Id.* at 190–92, 207.) In witness David Hill's telling, however, "[i]t looked like [Officer Kraeger] was intentionally trying not to hurt her," and "her face never touched the ground." (Hill Dep. at 4.)

Once Ms. Barcomb was on the ground, Officer Kraeger handcuffed her and moved her onto her stomach.[5] (Barcomb Dep. at 193.) Ms. Barcomb did not struggle with the

---

[4] David Hill, an individual who witnessed the incident, though the record does not reveal from what distance, testified that before taking Ms. Barcomb to the ground, the officers tried to grab her arm and put it behind her back, but she pulled away. The officers then quickly brought her to the ground. (Hill Dep., Ex. B to Defs.' Loc. R. 56(a)1 Stmt. [Doc. # 31] at 3.)

[5] She landed on her side. (Barcomb Dep. at 193.)

3

officer, but she continued to yell. (*Id.* at 192–94.) At that point, Officer DiMassa warned Plaintiff that if she did not stop yelling he was "going to have to taser" her. (*Id.* at 192.) Ms. Barcomb reports that she told the officers repeatedly that the handcuffs were too tight, and she asked them to loosen them, but they refused, responding "We're just going from here to the station. You can make it." (*Id.* at 103, 193.) The officers transported Ms. Barcomb to the police station and placed her in a holding cell, later calling an ambulance to take her to the hospital. (*Id.* at 194.) Ms. Barcomb was charged with disorderly conduct, to which she pled guilty on July 3, 2012. (*Id.* at 23–24.)

Ms. Barcomb claims that she sustained bruises and scrapes to both wrists from the handcuffs, as well as to her right knee and left temple from hitting the ground. (*Id.* at 102–05.) All of these injuries resolved within about a week. (*Id.*) In addition, Ms. Barcomb asserts that the event exacerbated pre-existing anxiety, for which she has received and continues to receive psychiatric treatment. (*Id.* at 105–07.)

## II. Discussion[6]

As clarified at oral argument, Plaintiff alleges that Officer Kraeger utilized excessive force, in violation of her Fourth Amendment rights, by forcefully bringing her down to the ground and by putting excessively tight handcuffs on her, and Officer DiMassa failed to intervene after Officer Kraeger handcuffed her.[7] Defendants respond that: (1) Officer Kraeger did not utilize excessive force; (2) Officer DiMassa cannot be held liable for failing

---

[6] Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record. Fed. R. Civ. P. 56(c).

[7] As Plaintiff conceded at oral argument, the summary judgment record undisputedly shows that Officer DiMassa participated in neither the takedown nor the handcuffing of Plaintiff. (*See* Barcomb Dep. at 183 ("Q. So did DiMassa ever touch you?" "A. No."); Loc. R. 56(a)1 Stmt. ¶ 23 (". . . Officer Kraeger put her in handcuffs with her arms behind her back."); Loc R. 56(a)2 Stmt. ¶ 23 ("Admit.").) As such, he can only be held liable under a failure to intercede theory. *See Nelson v. City of Stamford*, No. 09cv1690 (VLB), 2012 WL 233994, at *6 (D. Conn. Jan. 25, 2012) ("'It is well settled in this Circuit that personal involvement in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006))).

to intervene; and (3) Defendants are entitled to qualified immunity. Each of these arguments is discussed in turn below.

### A. Officer Kraeger's Conduct

"[A p]olice officer's application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable 'in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation.'" *Maxwell v. City of New York,* 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. O'Connor,* 490 U.S. 386, 397 (1989)). Although police officers are entitled to use some degree of force when an arrestee is resisting arrest, the mere fact that a suspect resists does not render an excessive use of force objectively reasonable. *See Sullivan v. Gagnier,* 225 F.3d 161, 165–66 (2d Cir. 2000) ("The fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of *some* degree of force, but it does not give the officer license to use force without limit.").

Determining whether an officer's conduct was objectively reasonable requires balancing a plaintiff's Fourth Amendment rights against competing governmental interests and considering the circumstances "from the perspective of a reasonable officer on the scene." *See Graham,* 490 U.S. at 396–97. "This balancing," the Supreme Court explained in *Graham,* "'requires careful attention to the facts and circumstances of each particular case, including'" (1) the severity of the underlying crime; (2) "'whether the suspect poses an immediate threat to the safety of the officers or others'"; and (3) "'whether [s]he is actively resisting arrest or attempting to evade arrest by flight.'" *Brown v. City of New York,* 798 F.3d 94 (2d Cir. 2015) (quoting *Graham,* 490 U.S. at 396). "Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim

6

is not appropriate unless no reasonable factfinder could conclude that the officer's conduct was objectively unreasonable." *Amnesty America v. Town of West Hartford,* 361 F .3d 113, 123 (2d Cir. 2004).

Plaintiff claims two instances of excessive force: the takedown, and the excessively tight handcuffs.

1. **The Takedown**

Defendants assert that "Officer Kraeger's action of taking the plaintiff to the ground was objectively reasonable" because when Plaintiff ripped up the ticket and walked away from the officers, she "demonstrated her clear intent to flee the scene and evade arrest," and Officer Kraeger used no more than the "minimally necessary amount of force to apprehend the plaintiff and prevent her from walking away and evading arrest." (Defs.' Mem. Supp. Mot. Summ. J. [Doc. # 31-1] at 5.) Based on the (scant) evidence in the record, however, a reasonable jury could find otherwise.

The severity of the underlying crime with which Ms. Barcomb was charged was unquestionably slight. Disorderly conduct, a Class C misdemeanor, carries a maximum penalty of three months' imprisonment, *see* Conn. Gen. Stat. §§ 53a-182, 53a-36, and the minimal severity of Ms. Barcomb's conduct is evidence by the fact that she was sentenced to only a suspended sentence and probation (Barcomb Dep. at 29). Nor is it evident that Ms. Barcomb posed a threat to either the officers or anyone else. She was yelling and cursing and gesticulating with her hands, but there is no evidence that her behavior was in any way violent or threatening or that the officers interpreted it that way.

Indeed, the only justification Defendants offer for Officer Kraeger's use of force is their claim that Ms. Barcomb was attempting to evade arrest. But, whether Ms. Barcomb

7

evinced an intent to "flee" by slowly walking away from the officers at a time when they had neither informed her she was going to be arrested nor told her to remain where she was, is a question for the jury, as is the related question of whether it was reasonable for Officer Kraeger to respond to this "attempted flight" by forcibly taking Ms. Barcomb to the ground before even attempting to peaceably arrest her. *Cf. Brown v. City of New York*, 798 F.3d 94, 102–03 (2d Cir. 2015) ("[N]o reason appears why, with Brown standing, each officer could not have simply held one of her arms, brought it behind her, and put handcuffs on her wrists. Or they could have simply surrounded her, at least for a few moments, making it clear that she could not leave until she submitted to handcuffing. . . . [T]he availability of a much less aggressive technique is at least relevant to making the ultimate determination of whether excessive force was used.").

Defendants maintain, however, that Ms. Barcomb's claim should be dismissed because her claimed injuries, bruising and anxiety, were "de minimis." (Defs.' Mem. Supp. at 7.) This Court disagrees. Although some "[c]ourts in this Circuit have dismissed excessive force claims brought under the Fourth Amendment where a plaintiff only suffers a *de minimis* injury," *Porath v. Bird*, No. 9:11-cv-963 (GLS) (CFH), 2013 WL 2418253, at *7 (N.D.N.Y. June 3, 2013), "[t]his approach to the question of excessive force . . . misunderstands the Fourth Amendment analysis," *Adedeji v. Hoder*, 935 F. Supp. 2d 557, 566 (E.D.N.Y. 2013) (footnote omitted). The "core judicial inquiry" is "not whether a certain quantum of injury was sustained," but rather whether unreasonable force was applied given the circumstances. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (internal

quotation marks omitted).[8] "To conclude . . . that the absence of some arbitrary quantity of injury requires automatic dismissal of an excessive force claim improperly bypasses this core inquiry." *Id.* at 39 (internal quotation marks omitted); *see Adedji*, 935 F. Supp. 2d at 567 ("The slightness of injury suffered as a result of the challenged use of force . . . does not preclude a finding that such force was objectively unreasonable.").

While "[t]he extent of injury suffered . . . is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation" and "may also provide some indication of the amount of force applied," "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." *Id.* at 37–38 (internal quotation marks omitted); *see Jackson v. City of New York*, 939 F. Supp. 2d 235, 253–54 (E.D.N.Y. 2013) ("It is inappropriate for this Court to rule as a matter of law that prosecution of claims to recover for such minor injuries would necessarily be futile because a jury may consider the lack of serious injury as evidence that the implemented force was

---

[8] Although *Wilkins* discussed excessive force claims under the Eighth Amendment, this Court, like several Circuit courts, can "see no reason why the same rationale should not apply in a Fourth Amendment excessive force case." *Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014); *see United States v. Rodella*, 804 F.3d 1317, 1328–29 (10th Cir. 2015) ("[W]e reject the . . . premise . . . that there is a de minimis injury requirement for Fourth Amendment excessive force claims in cases which involve more than handcuffing."); *Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011) ("We are not convinced . . . that evidence of only *de minimis* injury necessarily forecloses a claim of excessive force under the Fourth Amendment."); *Smith v. Murphy*, No. 14-1918, 2015 WL 7351758, at *3 (4th Cir. Nov. 20, 2015) ("[We] [f]ind[] no support for Defendants' contention that suffering only de minimis injuries bars one from asserting a Fourth Amendment excessive force claim . . . ."); *Flood v. Schaefer*, 439 F. App'x 179, 182 (3d Cir. 2011) ("[I]n evaluating claims of excessive force, the central issue is the force the officers employed (and whether it was reasonable under the circumstances), not the injury they caused.").

9

not excessive, and weigh it against a plaintiff's testimony, but that does not mean that there are no circumstances under which a plaintiff can prevail." (internal quotation marks and alterations omitted)); *Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987) ("While Robison did not seek medical treatment for her injuries, and this fact may ultimately weigh against her in the minds of the jury in assessing whether the forced used was excessive, this failure is not fatal to her claim. If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe.").

The Court additionally rejects Defendants' contention, raised for the first time at oral argument (and unsupported by citation to caselaw), that only physical injuries (and not Ms. Barcomb's claimed psychological trauma) may be considered in assessing excessive force claims, as "it is well-established that psychological injuries may be a compensable component of excessive force cases." *Frego v. Kelsick*, No. 11-CV-5462 (SJF) (SIL), 2015 WL 4728922, at *9 (E.D.N.Y. Aug. 10, 2015) (internal quotation marks omitted); *Fifield v. Barrancotta*, 545 F. Supp. 2d 307, 311 (W.D.N.Y. 2008) (same).

Here, where the underlying crime was indisputably slight and reasonable jurors could find that Ms. Barcomb neither posed an immediate threat to the officers nor actively resisted or attempted to evade arrest, the Court cannot conclude that summary judgment is warranted, even though Ms. Barcomb's claimed injuries are not extremely severe. Defendants' motion for summary judgment is therefore denied as to the takedown.

2. **The Handcuffs**

In addition to claiming Officer Kraeger utilized excessive force in the takedown, Plaintiff asserts that he used excessive force in putting her handcuffs on too tightly. "It is well-established that the right to make an arrest accompanies with it the right to use some

10

degree of physical coercion." *Esmont v. City of New York*, 371 F. Supp. 2d 202, 214 (E.D.N.Y. 2005) (citing *Graham*, 490 U.S. at 396). "Frequently, a reasonable arrest involves handcuffing the suspect, and to be effective handcuffs must be tight enough to prevent the arrestee's hands from slipping out." *Id.* Nonetheless, "[s]everal decisions have recognized that excessively tight handcuffing that causes injury can constitute excessive force in violation of the Fourth Amendment." *Shamir v. City of New York*, 804 F.3d 553, 557 (2d Cir. 2015); *see also Kerman v. City of New York*, 261 F.3d 229, 239–40 (2d Cir. 2001) (holding that "allegations of handcuff tightening" may suffice to state claim for excessive force under the Fourth Amendment); *Breen v. Garrison*, 169 F.3d 152 (2d Cir. 1999) (same); *Calamia v. City of New York*, 879 F.2d 1025, 1035 (2d Cir. 1989) (holding that an excessive force claim may lie where plaintiff was kept in unduly tight handcuffs for five or six hours).

"The reasonableness of the handcuffing of an arrestee must be determined in light of the minimal amount of force necessary to maintain custody" of the individual. *Esmont*, 371 F. Supp. 2d at 214. In "evaluating the reasonableness of handcuffing," courts in this Circuit often "consider evidence that: 1) the handcuffs were unreasonably tight; 2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." *Id.*

Defendants contend that Plaintiff's claim fails as a matter of law because "there is no evidence that the plaintiff ever informed the officers that she felt her handcuffs were overly tight"; "she does not claim that either Officer Kraeger or Officer DiMassa ignored any pleas that the handcuffs were too tight"; and Plaintiff "did not sustain any continuing injury from the handcuffing." (Defs.' Mem. Supp. at 6–7.)

11

These arguments are, however, belied by the summary judgment record. Ms. Barcomb's uncontradicted testimony is that she "kept telling" the officers to loosen the handcuffs, and they refused to do so.[9] (Barcomb Dep. at 103, 193.) She further testified that because the handcuffs were unduly tight, she sustained scrapes and bruises to both of her wrists. (*Id.* at 102–04.) Finally, she stated that although she was yelling when Officer Kraeger took her to the ground, she did not struggle with him but rather lay perfectly still (*id.* at 193–94), making the need for excessively tight handcuffs questionable, particularly in light of the nonviolent and lesser nature of the offense for which she was arrested and the lack of any evidence indicating that she was behaving in a threatening or violent manner. *See Sullivan*, 225 F. 3d at 166 ("The force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened against the officer."). Because a reasonable jury could find that Officer Kraeger's conduct in putting excessively tight handcuffs on Plaintiff was unreasonable, Defendants' motion for summary judgment is denied as to Officer Kraeger's role in the handcuffing.

B.  **Officer DiMassa's Conduct**

Defendants next contend that Officer DiMassa cannot be held liable for failing to intercede in Officer Kraeger's handcuffing of Plaintiff. "A police officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in

---

[9] Defendants contended at oral argument that although Ms. Barcomb claims to have asked the officers to loosen the handcuffs, she did not tell them that the cuffs were too tight. However, because it is reasonable to assume that an individual pleading for her handcuffs to be loosened intends to communicate that they are too tight, and a reasonable officer hearing such pleas would so understand them, this is a distinction without a difference.

his presence by other officers." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997) (internal quotation marks omitted). However, "[l]iability may attach only when (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008). There is no dispute that Officer DiMassa took no steps to intervene. Defendants contend, however, that Officer DiMiassa had no reasonable opportunity to intervene and that a reasonable person in his position would not have known that Plaintiff's rights were being violated.

1. **Opportunity to Intervene**

Defendants assert that Officer DiMassa had no opportunity to intervene because "Officer Kraeger's conduct of . . . handcuffing [Plaintiff] occurred rapidly." (Defs.' Mem. Supp. at 16.) While both Plaintiff and David Hill testified that the arrest happened quickly (*see* Barcomb Dep. at 207–08; Hill Dep. at 3–4), the handcuffs remained on for at least the duration of the trip to the police station, during which time Plaintiff repeatedly complained that they were too tight, and Officer DiMassa had every opportunity to loosen them but refused to do so. A reasonable jury could therefore find that Officer DiMiassa had a realistic opportunity to intervene and prevent the harm but took no reasonable steps to do so.

2. **Whether a Reasonable Officer Would Know Plaintiff's Rights were Being Violated**

Defendants next assert that "it was objectively reasonable for Officer DiMassa to believe that Officer Kraeger had not violated any of the plaintiff's clearly established rights" because "no such violation actually occurred" and "plaintiff has not alleged that she

13

informed either Officer DiMassa or Officer Kraeger that she was injured by the handcuffs being too tight." (Defs.' Mem. Supp. at 17.) Because this argument merely reiterates Defendants' qualified immunity claim, it is discussed below in the context of that claim.

### C. Qualified Immunity

Both Defendants contend that they are entitled to qualified immunity. Qualified immunity shields government officials from civil suit when their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Thus, qualified immunity protects a defendant if "(1) his conduct does not violate a clearly established constitutional right, or (2) it was objectively reasonable for the officer to believe his conduct did not violate a clearly established constitutional right." *Hartline v. Gallo,* 546 F.3d 95, 102 (2d Cir. 2008) (internal quotation marks omitted). A defendant's belief is objectively reasonable if "officers of reasonable competence could disagree on the legality of the action at issue in its particular factual context." *Zalaski v. City of Hartford,* 723 F.3d 382, 389 (2d Cir. 2013) (internal citations and quotation marks omitted).

In this case, as previously noted, a reasonable jury could conclude that the officers employed unreasonable force against Ms. Barcomb in violation of her clearly established constitutional right to be free from excessive force. *See Green v. Montgomery*, 219 F.3d 52, 59 (2d Cir.2000) ("It is beyond dispute that the right to be free from excessive force has long been clearly established"). A reasonable jury could also find that it was objectively unreasonable for the officers to believe their conduct did not violate Mr. Barcomb's clearly established right to be free from excessive force. If Ms. Barcomb's account is credited, she

was forcefully thrown to the ground without warning for the misdemeanor of disorderly conduct (the sum total of which consisted of yelling and making a scene in a public park), placed in excessively tight handcuffs which caused scrapes and bruising to her wrists, and kept in those excessively tight handcuffs despite being cooperative and pleading for the handcuffs to be loosened. These alleged facts suffice to preclude summary judgment on either the excessive force claims or the affirmative defense of qualified immunity at this stage. *See Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012) ("[A] decision dismissing a claim based on qualified immunity at the summary judgment stage may only be granted when a court finds that an official has met his or her burden demonstrating that no rational jury could conclude '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2080 (2011))).

### III.  Conclusion

For the foregoing reasons, Defendants' Motion [Doc. # 31] for Summary Judgment is DENIED.

IT IS SO ORDERED.

    /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 5th day of May, 2016.

15